UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CLAYTON H. MILLER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:07-CV-1086 CAS |
| MARK D. ALBRIGHT, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the parties' cross-motions for summary judgment. Defendant Police Officers Mark Albright and Patrick Cobb and the individual members of the Board of Police Commissioners move for summary judgment on all of plaintiff's claims pursuant to 42 U.S.C. § 1983 based on the doctrine of qualified immunity. Defendants also seek summary judgment on plaintiff's state law claims asserting, among other things, the doctrine of official immunity. Plaintiff seeks summary judgment or partial summary judgment of liability on his illegal entry, unlawful arrest, and excessive force claims asserted pursuant to 42 U.S.C. § 1983. For the following reasons, defendants' motion for summary judgment will be granted in part and denied in part and plaintiff's motion for summary judgment will be denied.

**I. Background**

This is an action pursuant to 42 U.S.C. § 1983 and state law seeking monetary relief for the alleged violation of plaintiff Clayton Miller's rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Plaintiff also asserts state law claims of assault and battery, false arrest and imprisonment, invasion of privacy, malicious prosecution, trespass, and conspiracy. Plaintiff alleges that defendant Police Officers Mark Albright and Patrick Cobb

unlawfully entered his house, assaulted him, and arrested him on false pretenses in connection with a suspicious person investigation. Plaintiff's first five causes of action arise under § 1983 and assert claims of unlawful entry, unlawful arrest, and excessive force. Plaintiff then asserts six "pendant causes of action" for his state law claims.

## II. Legal Standard

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a

material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving this motion for summary judgment.

## III. Facts[1]

On June 7, 2005, Police Officers Mark Albright and Patrick Cobb of the St. Louis Metropolitan Police Department were dispatched to the area of Dewey Elementary School, 6746 Clayton Avenue, St. Louis, Missouri, on the report of a suspicious person allegedly taking pictures of children on school property. The 911 dispatcher stated that the suspect had been taking pictures "supposedly for the last 45 minutes" and that he was "supposedly intoxicated, refusing to leave the area." The 911 call had come from the assistant principal of the school.

Officers Cobb and Albright spoke with Assistant Principal Grezinger when they arrived at the school.[2] Following this interview and an interview with an anonymous source, the officers proceeded

---

[1] Very few facts are not subject to dispute. For example, defendants state, "The 911 dispatcher also reported that the suspicious person appeared to be intoxicated." Plaintiff denies this fact, stating that "the dispatcher . . . does not state that the suspicious person appeared to be intoxicated, rather the dispatcher stated 'he's supposedly intoxicated.'" This is but one of countless examples.

[2] Defendants Cobb and Albright have submitted affidavits in which they state that they spoke with Assistant Principal Grezinger at the school. Plaintiff denies this fact, but merely states "denied"

toward 1125 Central, which is plaintiff's residence. Plaintiff's front door was open.[3] Officer Albright knocked and announced "St. Louis Police, anybody home!" and received no response. Officers Cobb and Albright entered plaintiff's residence.

Inside the residence, the officers found plaintiff asleep. The officers woke plaintiff. The parties do not agree on the nature of the force used to wake plaintiff and what happened next, but do agree that Officer Albright punched the right side of plaintiff's face. Officer Albright also deployed a baton and hit plaintiff's right leg, at or about the knee. The officers then placed plaintiff in handcuffs and led him out of his home. At least one person identified plaintiff. He was arrested and charged with assault of a law enforcement officer in the third degree and a municipal ordinance violation of trespassing on school property.

## IV. Discussion

### A. Defendants' Motion for Summary Judgment

#### (1) Qualified Immunity

The defendants move for summary judgment on plaintiff's claims under Section 1983 based on qualified immunity. Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S.Ct. 808, 815 (2009). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id.

---

and does not set forth with specific reference the portion of the record upon which he relies. Pl. Resp. to Def. Statement of Facts at ¶ 15. As a result, this fact is deemed admitted under Local Rule 4.01(E).

[3]There is a factual dispute regarding whether plaintiff had an automatically closing storm door and whether that storm door was closed.

4

In Saucier v. Katz, 533 U.S. 194, 201 (2001), the Supreme Court developed a two-part inquiry for determining whether defendants are entitled to the protections of qualified immunity. The two questions are whether the facts alleged constitute a violation of a constitutional right and whether that right was "clearly established." Id. The questions need not be addressed in that order. Pearson, 129 S. Ct. at 818.

Defendants assert they are entitled to qualified immunity on plaintiff's claims of unlawful entry and arrest. Plaintiff asserts that the officers unlawfully entered his house and unlawfully arrested and imprisoned him in violation of his Fourth Amendment rights. There is no dispute that the officers entered plaintiff's home and handcuffed and restrained him without a warrant. A warrantless entry and search of an individual's home violates the Fourth Amendment unless it is supported by probable cause and exigent circumstances. United States v. Ball, 90 F.3d 260, 263 (8th Cir. 1996) ("Police officers may not enter or search a home without a warrant unless justified by exigent circumstances."). Additionally, absent exigent circumstances, an arrest warrant is required to arrest a suspect in his home. Haley v. Armontrout, 924 F.2d 735, 737 (8th Cir. 1991) (citing Minnesota v. Olson, 495 U.S. 91 (1990)); United States v. Clement, 854 F.2d 1116, 1118-19 (8th Cir. 1988) ("[P]olice must obtain a warrant before making a felony arrest in the home of a suspect unless there are exigent circumstances.").

The Court must determine whether plaintiff's constitutional right to be free of unlawful entry and arrest would have been violated on the facts alleged, taken in the light most favorable to him. See Saucier, 533 U.S. at 201. The Court concludes that it would. The facts, taken in the light most favorable to plaintiff, show that plaintiff was taking pictures around the area of Dewey School and was asked to leave by the school principal. The principal called 911 to report a "suspicious person"

who was allegedly intoxicated and taking pictures of children on school property. Officers Albright and Cobb responded to the call and were directed to plaintiff's home by the principal and an anonymous woman they met on the street. The officers went to plaintiff's home, knocked, and received no response. Claiming that they feared "either a medical emergency or a burglary," the officers entered the residence.

Generally, the Fourth Amendment requires the police to obtain a warrant before entering a home. See Smith v. Kansas City, Mo. Police Dept., ___ F.3d ____, 2009 WL 3713701, *2 (8th Cir. Nov. 9, 2009). Without a warrant, the police may enter a home if they act with probable cause and exigent circumstances exist. See Radloff v. City of Olwein, Iowa, 380 F.3d 344, 348 (8th Cir. 2004). In the absence of exigent circumstances, the law is clear that entry into a home without a warrant is presumptively unreasonable under the Fourth Amendment. See Payton v. New York, 445 U.S. 573, 588 (1980). As the Eighth Circuit has stated, "In [no setting] is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their . . . houses . . . shall not be violated.'" Rogers v. Carter, 133 F.3d 1114, 1118 (8th Cir. 1998) (quoting Payton, 445 U.S. at 588).

Exigent circumstances are typically limited to situations "where a life is threatened, a suspect's escape is imminent, or evidence is about to be destroyed." Radloff, 380 F.3d at 348; see also United States v. Duchi, 906 F.2d 1278, 1282 (8th Cir. 1990) ("The warrant requirement is suspended when—in the press of circumstances beyond a police officer's control—lives are threatened, a suspect's escape looms, or evidence is about to be destroyed."). Exigent circumstances also exist

where "there is a compelling need for official action and there is no time to secure a warrant." Smith, 2009 WL 3713701 at *2.

The Court finds that no such exigent circumstances existed in the present case. Defendants contend the fact that they feared a medical emergency inside plaintiff's home created an exigent circumstance. While courts have found a warrantless entry justified on the basis of a suspected medical emergency, this situation differs from the cases upon which defendants rely: Winchester v. Cosaineau, 404 F. Supp. 2d 1262, 1270 (D. Colo. 2005), Hardesty v. Hamburg Twp., 461 F.3d 646, 656 (6th Cir. 2006), and Radloff, 380 F.3d at 346. In Winchester, the police responded to a dispatch received at 3:00 a.m. by the city police and fire departments reporting a possible suicide or drug overdose inside the Winchester home. When the police and fire officials received no response after knocking on the door and announcing their presence, the officials entered the residence, believing someone inside might be in need of immediate medical aid and possibly dying. In Hardesty, the officers entered the Hardesty home without a warrant after observing a young man lying on a couch with blood on his hands and pants, apparently not breathing, and unresponsive to loud noises and bright lights. In Radloff, the officers entered the residence after observing illegal activity taking place inside. See also Brigham City, Utah v. Stuart, 547 U.S. 398, 400 (2006) (holding police may enter home without warrant when they have a reasonable basis for believing that an occupant is "seriously injured or imminently threatened with such injury").

Here, by contrast, the officers had no grounds to believe that someone inside plaintiff's residence might be in need of immediate medical attention. The only grounds cited by defendants to suggest a medical emergency were the report from the 911 dispatcher that plaintiff was intoxicated.[4]

---

[4]Defendants also attempt to rely on the principal's statement that plaintiff had told the principal that plaintiff's camera was "bulletproof" and an anonymous neighbor's statement that

7

When the officers got to plaintiff's door, they did not observe anybody inside the residence and did not see anything that would cause them to suspect a medical emergency. While it is true that nobody answered the door after the officers knocked and announced themselves, there is simply no basis for believing anybody's life was in danger inside the home. An equally plausible explanation would be that nobody was home. Merely receiving a call that a person is intoxicated and uncooperative is not grounds enough to suspect a medical emergency inside the person's home.

The facts surrounding the officers' warrantless entry into plaintiff's home are similar to those in Hopkins v. Bonvicino, 573 F.3d 752 (9th Cir. 2009). In Hopkins, a third party reported that Hopkins had been involved in an extremely minor traffic incident, and that he appeared to have been drinking. When the officers knocked and announced their presence at Hopkins' residence, they received no response. Based on the information that Hopkins smelled of alcohol, the officers broke into Hopkins' home through a screen door. The officers' explanation for their warrantless entry was that they feared Hopkins was on the brink of a diabetic coma and broke into his home to offer medical assistance. The Ninth Circuit found this contention unsupportable: "the mere suggestion that someone has a smell resembling alcohol on his breath and appears slightly intoxicated does not create 'reasonable grounds' to suspect a diabetic emergency sufficient to justify warrantless entry into a home. If it did . . . any time the police receive information from a layperson that someone inside a home has the appearance of a person who has consumed alcohol the police will be authorized to enter that home without a warrant." Id. at 765.

---

plaintiff was a "drunk." These statements, contained in Officer Albright and Officer Cobb's affidavits, are hearsay and cannot be relied upon for purposes of summary judgment. See generally Fed. R. Civ. P. 56(e)(1) and Fed. R. Evid. 801 & 802.

Defendants argue that even if they unlawfully entered plaintiff's home, "the law is not clearly established that the emergency assistance exception would not apply in similar facts." Under Eighth Circuit precedent, to be clearly established, a right must be sufficiently clear such that a reasonable officer would understand that what he is doing violates that right. Smith, 2009 WL 3713701 at *3. "In cases dealing with exigent circumstances, [the Eighth Circuit] asks whether the officer 'could have reasonably but mistakenly concluded that exigent circumstances were present based upon the information [the officer] possessed at the time.'" Id. (quoting Rogers v. Carter, 133 F.3d 1114, 1119 (8th Cir. 1998)). Taken in the light most favorable to plaintiff, the facts of this case would not have led an officer to reasonably conclude that exigent circumstances were present. The officers possessed information that an intoxicated individual was allegedly taking pictures of school children. The officers went to the suspect's home and the suspect did not answer the door. There was no basis for an officer to reasonably conclude that a medical emergency was taking place inside plaintiff's home, and therefore the officers could not reasonably but mistakenly conclude that exigent circumstances were present. The Court finds that the law was clearly established and the right sufficiently clear that a reasonable officer would have understood entering plaintiff's home and arresting him without a warrant under the circumstances violated plaintiff's Fourth Amendment rights. Defendants are therefore not entitled to qualified immunity on plaintiff's illegal entry and unlawful arrest claims.

    (2)    Plaintiff's Claim of Excessive Force

Defendants argue they are entitled to summary judgment on the merits of plaintiff's excessive force claim because defendant Albright's use of force was not excessive and did not violate plaintiff's clearly established rights. It is clearly established that the use of excessive force in effecting a seizure violates the Fourth Amendment. Tennessee v. Garner, 471 U.S. 1, 8-9 (1985). The Court analyzes

9

excessive force claims in the context of seizures under the Fourth Amendment, applying its reasonableness standard. Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009).

The facts surrounding the excessive force claim are in dispute. Plaintiff claims he was asleep in his bedroom and awoke to somebody slapping and "messing" with his face and shoulder area. He did not recall anybody saying anything. He was startled, sat up, and waved his arms around. He then heard someone say, "assaulting a police officer," and he was punched in the face. He states that he laid stomach down on the floor and tried to cover his face. He was then struck three times on the knee with a police baton.

Officers Cobb and Albright state that they found plaintiff asleep in his room and tapped him on the shoulder to wake him. Plaintiff woke up and said "What the f***?" When the officers identified themselves, plaintiff stated "F*** the police!" and swung his left arm and fist toward Officer Albright. Officer Albright stepped back, dodged the swing, and threw a single punch to plaintiff's right cheek area. Officer Albright then states that he informed plaintiff he was under arrest, and attempted to grab his arms. Plaintiff continued to resist, swinging and flailing his arms, and attempting to strike both officers. To protect himself, Officer Albright states that he deployed his baton and delivered one blow to plaintiff's right thigh, above the knee. They then cuffed plaintiff without further incident.

In determining whether summary judgment is appropriate, the Court must view the facts and inferences in the light most favorable to the plaintiff, the non-moving party. The Court has reviewed the record extensively and, based on the record before it, finds there is a dispute as to the amount of force used to awaken, handcuff and arrest plaintiff. Based on these disputed facts, the Court cannot determine as a matter of law whether the force the officers applied in effecting plaintiff's arrest was reasonable under the circumstances. As a result, the defendants are not entitled to qualified immunity

on plaintiff's claim pursuant to 42 U.S.C. § 1983 for excessive force. Nor are they entitled to summary judgment on the merits of this claim.

### (3) Plaintiff's Malicious Prosecution Claims Under § 1983

Defendants argue they are entitled to summary judgment on plaintiff's claims of malicious prosecution under the Fourth Amendment. In support of their argument, defendants cite <u>Kurtz v. City of Shrewsbury</u>, 245 F.3d 753, 758 (8th Cir. 2001), in which the Eighth Circuit held that malicious prosecution by itself is not punishable under § 1983. <u>Id.</u> (citing <u>Gunderson v. Schlueter</u>, 904 F.2d 407, 409 (8th Cir. 1990). Plaintiff attempts to distinguish <u>Kurtz</u> on the basis that the case sought relief under the Fourteenth Amendment and not the Fourth Amendment. Plaintiff states that the Eighth Circuit "left open the possibility . . . that a malicious prosecution can constitute a violation of the Fourth Amendment." Plaintiff cites no controlling case law.

The Court agrees with defendants. The Eighth Circuit has uniformly held that malicious prosecution is not punishable under § 1983 because it does not allege a constitutional injury. <u>Kurtz</u>, 245 F.3d at 758. Because plaintiff cannot allege a constitutional injury arising out of his alleged malicious prosecution, the Court grants summary judgment to defendants on plaintiff's malicious prosecution claims brought pursuant to 42 U.S.C. § 1983.

### (4) Plaintiff's Property Damage Claims

Defendants argue they are entitled to summary judgment on plaintiff's property damage claims, because plaintiff admitted at deposition that he suffered no property damage. Plaintiff states he did not testify that he had no property damaged, and this is a disputed issue of fact. Plaintiff cites his Statement of Facts as to Which an Issue Exists (Doc. 153) ¶¶ 41-46, 55-61, 65 to support his argument that this is an issue of fact.

The Court has reviewed plaintiff's deposition testimony and plaintiff's Statement of Facts as to Which an Issue Exists, and finds no dispute of fact. Plaintiff testified at deposition that the only property damage he suffered was blood on his carpet. He stated, however, that he did not have new carpet put in, he just cleaned up the blood. "I mean, they didn't damage my house or anything. They just damaged me --." (Pl. Dep. at 167). Nothing in plaintiff's statement of facts contradicts this deposition testimony. As such, based on undisputed facts, the Court finds that plaintiff did not suffer property damage and defendants are entitled to summary judgment on plaintiff's property damage claims.

(5) Plaintiff's Fourth Amendment Claim Against the Board of Police Commissioners

Defendants state the members of the Board of Police Commissioners are entitled to summary judgment on plaintiff's Fourth Amendment claim. In his complaint, plaintiff alleged violations of his constitutional rights that were caused by an official policy or custom. See Compl. at ¶ 16. In opposition to summary judgment, plaintiff supports this conclusory allegation with testimony from Officer Albright at the suppression hearing. In his testimony, however, Officer Albright does not refer to any official policy or custom of the Board. See Pl. Opp'n at 17 [Doc. 154].

Summary judgment is appropriate where there is no independent evidence, other than the nonmoving party's unsubstantiated allegations. Pony Computer, Inc. v. Equus Computer Sys. of Missouri, Inc., 162 F.3d 991, 997 (8th Cir. 1998) (rejecting conclusory affidavits that did not enumerate specific evidence). Here, plaintiff has produced no evidence to support his conclusory allegation that the officers entered his residence based on an official policy or custom of the Board. Accordingly, the Court will grant defendants' motion for summary judgment on plaintiff's Fourth Amendment claim brought against the members of the Board of Police Commissioners.

(6) Plaintiff's State Law Claims

In addition to his claims brought pursuant to 42 U.S.C. § 1983, plaintiff asserts supplemental state law claims against defendants for assault and battery, false arrest and imprisonment, invasion of privacy, malicious prosecution, trespass, and conspiracy. These claims are pled in the complaint as plaintiff's first through sixth "pendant causes of action." The Erie doctrine's principles apply in the context of pendent jurisdiction over supplemental state law claims, and therefore the Court applies the substantive law of Missouri, the forum state. See Witzman v. Gross, 148 F.3d 988, 990 (8th Cir. 1998) (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)).

(a) Official Immunity

Defendants move for summary judgment on each state law claim, asserting that under the Missouri official immunity doctrine, actions taken by a police officer during his investigation of a possible crime are discretionary in nature and are protected by official immunity. Under the Missouri doctrine of official immunity, public officials acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions, but may be held liable for torts committed when acting in a ministerial capacity. Southers v. City of Farmington, 263 S.W.3d 603, 610 (Mo. 2008); Kanagawa v. State ex rel. Freeman, 685 S.W.2d 831, 835 (Mo. 1985) (en banc), overruled on other grounds by Alexander v. State, 756 S.W.2d 539 (Mo. 1988) (en banc). Official immunity protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts. Whether an act can be characterized as discretionary depends upon the degree of reason and judgment required to carry it out. Rustici v. Weidemeyer, 673 S.W.2d 762, 769 (Mo. 1984) (en banc) (quoted case omitted).

Official immunity does not apply, however, to discretionary acts done in bad faith or with malice. See State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 446 (Mo. 1986) (en banc). "The

13

relevant definition of bad faith or malice in this context ordinarily contains a requirement of actual intent to cause injury." Id. at 447. "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." Id. (internal punctuation and quoted case omitted). "Bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." Id. An allegation of "malicious motive or purpose or of conscious wrongdoing" is sufficient under Missouri law to preclude application of the official immunity doctrine. See id.

Here, plaintiff has alleged that defendant Officers Albright and Cobb committed intentional torts—assault and battery, false arrest and imprisonment, invasion of privacy, malicious prosecution, and trespass—based on their investigation of the report of an individual taking pictures of school children. Plaintiff alleges that Officers Cobb and Albright walked into his home and physically beat him without any provocation. These allegations encompass a conscious abuse of official duty and power which could fall within the scope of malice or bad faith. Under these circumstances, whether official immunity applies is a question of fact that must be considered by the jury. See Blue v. Harrah's North Kansas City, LLC, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005) (summary judgment inappropriate where facts created a genuine dispute about whether officer acted in bad faith or with malice in making arrest, thereby precluding him from claiming official immunity, and issue was for jury). Defendants' motion for summary judgment on plaintiff's first, second, third, fourth, and fifth state law claims is denied.

(b)     Malicious Prosecution

The elements of an action for malicious prosecution under Missouri law are (i) the commencement of a prosecution against plaintiff; (ii) instigation of that prosecution by the defendant; (iii) termination of the prosecution in plaintiff's favor; (iv) the lack of probable cause for the prosecution; (v) malice on the part of the defendant; and (vi) damage to the plaintiff. Sanders v. Daniel Int'l Corp., 682 S.W.2d 803, 807 (Mo. 1984). As Missouri courts do not favor this cause of action, strict proof of all six elements is required. Id. at 806; Perry v. Dayton Hudson Corp., 789 S.W.2d 837, 841 (Mo. Ct. App. 1990). A defending party in a malicious prosecution action may establish a right to summary judgment by showing facts which negate any one of the plaintiff's elements. Thompson v. Wal-Mart Stores, Inc., 890 S.W.2d 780, 782 (Mo. Ct. App. 1995).

The sum of defendants' argument on plaintiff's malicious prosecution claim is that the underlying state criminal charges were dismissed by the State pursuant to nolle prosequi. Defendants allege a dismissal nolle prosequi is not a termination of the prosecution in plaintiff's favor, and therefore that plaintiff cannot meet an essential element of his claim. Plaintiff responds that this is an error on the docket sheet, and attaches a certified copy of the Judgment and Orders of Judge Hogan terminating the assault proceeding by directed verdict in favor of plaintiff. See Def. Resp. at 19 (Doc. 154); Pl. Statement of Facts (Doc. 127), Ex. 3&4. The documents submitted by plaintiff establish that a directed verdict was entered in plaintiff's favor on the charged offense of assault on a law enforcement officer. Id. Defendants have not shown facts to negate any one of the elements of plaintiff's malicious prosecution case, and therefore summary judgment will be denied.

B.     Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment, partial summary judgment, or in the alternative, partial summary judgment as to liability on his claims of unlawful entry, unlawful arrest, and unreasonable

15

and excessive force brought pursuant to 42 U.S.C. § 1983. In support of his motion, plaintiff argues that the Court should give collateral estoppel effect to the underlying state court findings granting plaintiff a directed verdict on the charge of assault of a police officer. As part of that ruling, the state court found the warrantless arrest of plaintiff in his home was unlawful. Defendants argue that plaintiff cannot use the state court ruling against them in this proceeding, because they were neither parties nor in privity with a party to the state criminal proceedings and did not have a full and fair opportunity to litigate the issue in those proceedings.

In ruling in plaintiff's favor on plaintiff's motion to suppress and dismiss, Judge Elizabeth Hogan stated, "there is no question the officers had no warrant to enter the premises, nor, in the opinion of the Court, were there any exigent circumstances that would have allowed them to enter without a warrant." The state court found "insufficient evidence to overcome directed verdict in favor of defendant [Clayton Miller]." Plaintiff attempts to use issue preclusion (or collateral estoppel) to avoid relitigating these issues in this proceeding. Specifically, plaintiff wants to use the doctrine to avoid relitigating (1) whether the officers entered without a warrant; (2) whether exigent circumstances existed; and (3) whether there was probable cause.

Federal courts considering the preclusive effects of a state court judgment must apply the issue preclusion law of the state where the judgment was rendered. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 84 (1984); Medvick v. City of Univ. City, 995 F.2d 857, 858 (8th Cir. 1993); see generally MOORE'S at 131.24[4]. Missouri courts apply the following test to determine whether the application of collateral estoppel is appropriate: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether

16

the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. See James v. Paul, 49 S.W.3d 678, 682 (Mo. 2001). The doctrine will not be applied where it would create inequities. Missouri courts analyze each case on its own facts. See id.

In Duncan v. Clements, 744 F.2d 48 (8th Cir. 1984), the Eighth Circuit held that a state court's finding that an arrest was unconstitutional as part of a state suppression hearing cannot be uses offensively against the arresting officers in a subsequent § 1983 proceeding. Id. at 51-53. "We hold that collateral estoppel is not appropriate in this case because [the police officer], the party against whom collateral estoppel is asserted, was neither a party nor in privity with a party to the prior state criminal proceeding. Likewise, we do not believe [the police officer] had a full and fair opportunity to litigate the issue in the state criminal proceedings." Id. at 51-52. The Eighth Circuit found that the State of Missouri was a party to the criminal prosecution, not the individual police officer. The interests of the State of Missouri in a criminal proceeding are not the same as those of an individual officer in a subsequent § 1983 proceeding. The individual officer's personal interests were not at stake in the criminal prosecution, only the State of Missouri's interests were at stake. In a § 1983 action, however, the officer's personal interests are at stake. Additionally, the court found that the individual officer had no control over the state's presentation of its case and did not make any decisions with regard to that prosecution. Id. at 52.

Like the police officer in Duncan, here Officers Albright and Cobb were not parties or in privity with a party in the prior state court criminal proceeding. Officers Albright and Cobb did not have identical interests to the State of Missouri in that proceeding, and their personal interests were not at stake. They were merely witnesses for the prosecution and had no control over the proceedings. Collateral estoppel is therefore not appropriate in this case.

Plaintiff also argues that he is entitled to summary judgment on his claim of excessive force. Plaintiff claims that at the suppression hearing, Officer Albright admitted to forcefully tapping plaintiff on the shoulder and head to try to awaken him and later striking him on his face and hitting him with the police baton. As previously discussed, see Part IV.A.2, supra, the Court finds disputed issues of fact preclude entry of summary judgment on plaintiff's claims of excessive force.

To the extent plaintiff raises any additional issues for summary judgment in his reply memorandum, the Court will not consider them. See Nebraska Plastics, Inc. v. Holland Colors Americas, Inc., 408 F.3d 410, 421 n.5 (8th Cir. 2005) ("This Court does not consider issues first raised in a reply brief unless the appellant gives some reason for failing to raise and brief the issue in his opening brief. Martin v. Am. Airlines, Inc., 390 F.3d 601, 608 n.4 (8th Cir. 2004).").

## V.     Conclusion

For the foregoing reasons, the Court will grant in part and deny in part defendants' motion for summary judgment and will deny plaintiff's motion for summary judgment, partial summary judgment, or in the alternative, partial summary judgment as to liability.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. [Doc. 123] The motion is granted as to plaintiff's malicious prosecution claims brought pursuant to 42 U.S.C. § 1983, plaintiff's property damage claims, and plaintiff's Fourth Amendment claims against the members of the Board of Police Commissioners. The motion is denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment, partial summary judgment, or in the alternative, partial summary judgment as to liability is **DENIED**. [Doc. 122]

An appropriate Partial Judgment will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 3rd day of December, 2009.